**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **ANTOINE SHAROD BENSON,** | § | |
| **TDCJ No. 02293998,** | § | |
| | § | |
| **Petitioner,** | § | |
| | § | |
| **V.** | § | **A-23-CV-876-RP** |
| | § | |
| **BOBBY LUMPKIN, Director,** | § | |
| **Texas Department of Criminal Justice,** | § | |
| **Correctional Institutions Division,** | § | |
| | § | |
| **Respondent.** | § | |

## ORDER

Before the Court are Antoine Sharod Benson's ("Petitioner") pro se Amended Petition for a Writ of Habeas Corpus (ECF No. 9), Respondent Bobby Lumpkin's Amended Answer (ECF No. 27), and Petitioner's Reply (ECF No. 22). Having reviewed the record and pleadings submitted by both parties, the Court denies Petitioner's federal habeas corpus petition under the standards prescribed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). *See* 28 U.S.C. § 2254(d).

## I. Background

In December 2018, Petitioner was charged by indictment with one count of burglary of a building, one count of possession of a controlled substance—oxycodone, 400 grams or more, and one count of engaging in organized criminal activity. (ECF No. 14-37 at 6-7.) A jury convicted Petitioner of all charges, and the judge sentenced Petitioner to 20 years imprisonment for the burglary charge, and 40 years imprisonment each for the other two charges, with the sentences to run concurrently. *State v. Benson*, No. CR-18-1279-C (274th Dist. Ct., Hays Cnty., Tex. Sept. 12, 2019.) (ECF No. 14-37 at 8-16.)

The following is a brief summary of the facts adduced at trial:

[Charles] Villarreal testified that he is a pharmacist and has owned MedPark Pharmacy for thirty years. He explained that the most "dangerous" narcotics at the pharmacy are kept in a large safe in a back room, to which only he and a technician had access. In the early hours of February 3, 2017, Villarreal received a notification from his burglar alarm system that there had been a break-in at the pharmacy. He accessed the pharmacy's video surveillance system and called the police. Video recordings from the surveillance system were entered into evidence and played for the jury. The videos initially showed three individuals inside the pharmacy, including one person wearing a hoodie and holding a crowbar leaning up against a steel door to the back of the pharmacy. … Villarreal said there appeared to be five individuals struggling to obtain the safe. Eventually, they were able to remove the safe [through] the back door. Villarreal said that there were 410 grams of oxycodone, in labeled bottles, in the safe at the time it was removed. He did not believe it would be possible for someone to know what was inside the safe without opening it.

. . . .

Photos taken by [San Marcos Police Department] officers inside the pharmacy were entered into evidence, including several showing a crowbar on the floor as well as debris and "drag marks" from where the safe was removed. [Officer] Tennant later observed the surveillance video from inside the pharmacy and took pictures of the five suspects to give to other officers; those photos were also entered into evidence. Tennant stated that the suspects were wearing "distinctive" clothing, including one suspect who was wearing a "distinctive style hoodie sweatshirt" with "white lettering on both sides of his shoulder" and a "white emblem on the chest." Tennant stated that [Petitioner] and Darion Williams were among the suspects in the surveillance video.

. . . .

Donald Lee testified that he is a canine handler, and he reported to the scene that night. His patrol dog alerted to a scent in a carport at a house on Patricia Street. He advised another canine handler to search the area from Patricia Street to Interstate 35. In doing so, the other officer located a suspect, who proceeded to run across the interstate. Later, Lee's patrol dog alerted to a scent near some railroad tracks next to an open field across the interstate. Eventually, Lee saw "a person lying down with tennis shoes on and there's a reflection off the tennis shoes." Lee's bodycam video was also entered into evidence and played for the jury. Lee commanded the suspect to stay on the ground, but the suspect got up and started to move, so Lee told his patrol dog to bite the suspect. The suspect put his hands up and "gave up," so the dog did not bite. The suspect was identified as [Petitioner].

The State sought to introduce the testimony of Patrick Aubry, a San Marcos Police Department detective, as an expert on criminal street gangs. On voir dire, Aubry testified that he is part of a regional violent crimes task force and has received training specifically regarding criminal street gangs, including "state-wide training" "run by the Texas Gang Investigators Association." Aubry explained that he has full access to TexGang, a database of gang membership used by law enforcement. Aubry was familiar with the gang known as "Fifth Ward Circle"; he said it is a Houston-based gang which "comes up in numerous bulletins and training information that is distributed statewide and nationwide" and is "known to be active in at least 25 states." Aubry said that Fifth Ward Circle has "well over 500 members" and that "they operate in three- to six-man crews to burglarize buildings[--i]n particular, pharmacies. They are looking for controlled substances and illicit substances that they can then sell on the street for a profit." Aubry stated that, in determining if a suspect is a gang member, he will look at whether there has been a judicial finding on the matter, whether an admission was made, whether the suspect has gang tattoos or frequents known gang locations, and whether the suspect has participated in crimes with other gang-affiliated individuals. He explained that he has never previously been designated as a gang expert in a court proceeding.

Aubry testified that [Petitioner] did not admit to being a member of Fifth Ward Circle. However, [Petitioner] was "documented at the time by the Houston Police Department" as a member of that gang. Aubry opined that the Houston Police Department was a reliable source, though he conceded he did not determine which Houston police officer, specifically, entered [Petitioner] into the database as a Fifth Ward Circle member. He later stated that he spoke with Michael Burdick of the Houston Police Department, who confirmed that [Petitioner] is part of the gang. Aubry noted that appellant has three tattoos—including one stating "Fifth Ward" across his abdomen—which indicated he was part of the gang. Aubry opined that [Petitioner] was "undoubtedly" a member of the Fifth Ward Circle. He stated that [co-defendants] Calvin Clayton and James Jackson were also documented as members of that gang.

The trial court admitted Aubry's expert testimony over [Petitioner]'s objection. In testimony before the jury, Aubry explained that he was involved in the case as a detective. He noted that [Petitioner] was the only suspect that was found on the opposite side of the interstate as the pharmacy, and that there was only one suspect who was seen running across the interstate. Aubry stated that [Petitioner] was wearing clothes which matched one of the suspects in the pharmacy surveillance video. He opined that there were six people involved in the burglary, including Clayton, who did not enter the pharmacy but acted as a lookout.

*Benson v. State*, No. 13-19-00519-CR, 2021 WL 4202150, at *2-3 (Tex. App.—Corpus Christi-

Edinburg, Sept. 16, 2021).

On appeal, Petitioner's appellate counsel argued (1) the trial court erred in denying Petitioner's motion for a new trial; (2) Petitioner's separate convictions for burglary and engaging in organized criminal activity violated the Double Jeopardy Clause; and (3) outside of the first point of error, an appeal as to Counts II and III of the indictment was frivolous and without merit, and cited *Anders v. California*, 386 U.S 738 (1967). Petitioner filed a pro se brief, arguing (1) the evidence was insufficient to support the possession of a controlled substance conviction; (2) the evidence was insufficient to support the engaging in organized criminal activity conviction; (3) the court erred in determining that Patrick Aubry was qualified to give expert testimony; (4) the State violated Petitioner's due process rights by failing to disclose exculpatory evidence; and (5) cumulative error warranted reversal. The state court of appeals declined to entertain Petitioner's pro se brief, concluding Petitioner was not entitled to hybrid representation and there was no legal authority supporting appellate counsel's attempt to file a merits brief as to Count I and an *Anders* brief as to Counts II and III. The court of appeals then overruled the two substantive points of error from counsel's brief, and affirmed Petitioner's conviction. *Benson v. State*, No. 13-19-00519-CR, 2021 WL 4202150 (Tex. App.—Corpus Christi-Edinburg, Sept. 16, 2021, pet. ref'd). Petitioner thereafter filed a counseled Petition for Discretionary Review (PDR), which the Texas Court of Criminal Appeals (TCCA) refused on March 2, 2022. *Benson v. State*, No. PD-0849-21 (Tex. Crim. App. Mar. 2, 2022). (ECF Nos. 14-32, 14-33.)

On February 14, 2023, Petitioner executed a pro se state habeas corpus application, listing the following grounds of relief:

1. Petitioner received ineffective assistance of appellate counsel when his counsel failed to argue on appeal that
    a. Petitioner's 40-year sentence for engaging in organized criminal activity is illegal;
    b. Petitioner's 20-year sentence for burglary is illegal;

      c.  there was insufficient evidence to support Petitioner's conviction for possession of a controlled substance;

      d.  there was insufficient evidence to support Petitioner's conviction for engaging in organized criminal activity;

      e.  the trial court abused its discretion by allowing Officer Aubrey to testify as a gang expert; and

      f.  the State failed to disclose exculpatory evidence, thereby violating Petitioner's right to due process.

2.  Trial counsel provided ineffective assistance of counsel when counsel failed to

      a.  conduct a pretrial investigation regarding Petitioner's charge for possession of a controlled substance; and

      b.  obtain a running objection and/or renew his initial objection to Detective Aubrey's hearsay testimony.

3.  The State violated Petitioner's right to due process by failing to disclose exculpatory evidence prior to Petitioner's trial.

(ECF No. 14-37 at 20-46.) On May 31, 2023, the TCCA denied Petitioner's state habeas application without written order. *Ex parte Benson*, No. WR-94,773-01 (Tex. Crim. App. May 31, 2023). (ECF No. 14-38.)

On July 23, 2023, Petitioner executed his pro se federal habeas petition. (ECF No. 1.) He then filed an amended petition on August 25, 2023, raising the same grounds of relief as he raised in his state habeas application. (ECF No. 9.) Respondent Lumpkin filed an answer (ECF No. 13) to which Petitioner filed a reply (ECF No. 15). Pursuant to the Court's order (ECF No. 24), Respondent filed an amended answer (ECF No. 27) to which Petitioner has not filed a reply.

## II. Standard of Review

Petitioner's federal habeas petition is governed by the heightened standard of review provided by the AEDPA. *See* 28 U.S.C. § 2254. Under § 2254(d), a petitioner may not obtain federal habeas corpus relief on any claim that was adjudicated on the merits in state court proceedings unless the adjudication of that claim either: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as

determined by the Supreme Court of the United States, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Brown v. Payton*, 544 U.S. 133, 141 (2005). This demanding standard stops just short of imposing a complete bar on federal court re-litigation of claims already rejected in state proceedings. *Harrington v. Richter*, 562 U.S. 86, 102 (2011) (citing *Felker v. Turpin*, 518 U.S. 651, 664 (1996)).

A federal habeas court's inquiry into unreasonableness should always be objective rather than subjective, with a focus on whether the state court's application of clearly established federal law was "objectively unreasonable" and not whether it was incorrect or erroneous. *McDaniel v. Brown*, 558 U.S. 120 (2010); *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003). A petitioner must show that the state court's decision was objectively unreasonable, not just incorrect, which is a "substantially higher threshold." *Schriro v. Landrigan,* 550 U.S. 465, 473 (2007); *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003). Even a strong case for relief does not mean the state court's contrary conclusion was unreasonable. *Richter*, 562 U.S. at 102. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id.* at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). As a result, to obtain federal habeas relief on a claim previously adjudicated on the merits in state court, Petitioner must show that the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

"When, as here, there is no reasoned state-court decision on the merits, the federal court 'must determine what arguments or theories ... could have supported the state court's decision;

and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court.'" *Sexton v. Beaudreaux*, 585 U.S. 961, 964-65 (2018) (quoting *Richter*, 562 U.S. at 102). "'If this standard is difficult to meet—and it is—that is because it was meant to be.'" *Mejia v. Davis*, 906 F.3d 307, 314 (5th Cir. 2018) (quoting *Burt v. Titlow*, 571 U.S. 12, 20 (2013)).

## III. Analysis

### 1. Pending Motions

#### a. Motion for Exculpatory Evidence

Petitioner has moved to obtain the following evidence from Respondent: (1) a *Brady*[1] notice regarding San Marcos Police Department (SMPD)'s investigation of Detective Tracy Frans; (2) the final disposition of the SMPD's investigation into Frans; (3) Petitioner's entry documentation into SMPD's gang database; and (4) Petitioner's entry documentation into the Houston Police Department's gang database. (ECF No. 19.) Respondent opposes the motion, arguing Respondent does not have the evidence Petitioner seeks, that Petitioner has failed to show good cause for the evidence, and that because Petitioner's state habeas application was adjudicated on the merits, this Court is limited to the record before the state habeas court.

Under the AEDPA, a federal court generally cannot "develop and consider new evidence." *Shoop v. Twyford*, 596 U.S. 811, 819 (2022). AEDPA limits this Court's review of the state habeas court's factual determinations to the evidence that was presented in the state court proceedings, and its review of legal claims to the record that was before the state habeas court. *Id.* (quoting *Pinholster*, 563 U.S. at 181). "A federal court may admit new evidence only in two limited situations: Either the claim must rely on a 'new' and 'previously unavailable' 'rule of constitutional law' made retroactively applicable by [the Supreme Court], or it must rely on 'a

---

[1] *Brady v. Maryland*, 373 U.S. 83, 87 (1963).

factual predicate that could not have been previously discovered through the exercise of due diligence.'" *Id.* at 812 (quoting 28 U.S.C. § 2254(e)(2)(A)).

As detailed further in Section 4 below, Petitioner attached a copy of a *Brady* notice the prosecutor sent to his co-defendant to his federal habeas petition. Petitioner alleges, and the state criminal docket confirms, that he never received a *Brady* notice even though all his other co-defendants did receive one. While Petitioner refers to the notice throughout his state habeas application, it is not clear from the record whether that document was transmitted to and considered by the TCCA.

However, as the Court details in Section 4, even assuming this document was relevant to Petitioner's underlying criminal conviction, his claims fail to substantiate a *Brady* violation. Further, this document was known to Petitioner at the time he filed his state habeas application and Petitioner does not argue his claim relies on a new or previously unavailable rule of Constitutional law made retroactive by the Supreme Court: rather, these claims rely on *Brady*, a case decided over 60 years ago. This is true for the three other documents Petitioner seeks: the final disposition of the internal investigation of Detective Frans, and the entry documentation for both the SMPD and HPD gang databases, both of which were discussed during the trial. None of these documents meets the exception for new evidence under the AEDPA. Accordingly, this motion is denied.

### b. Motion for Evidentiary Hearing

Petitioner also moves for an evidentiary hearing. (ECF No. 20.) Habeas petitioners are not entitled to a federal evidentiary hearing to develop new evidence to attack the state court's resolution of their claims. *Pinholster*, 563 U.S. at 181-82 ("If a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of § 2254(d)(1)

on the record that was before that state court."). Under the AEDPA, the proper place for development of the facts supporting a claim is the state court. *See Hernandez v. Johnson*, 108 F.3d 554, 558 n.4 (5th Cir. 1997) (holding the AEDPA clearly places the burden on a petitioner to raise and litigate as fully as possible his federal claims in state court). When, as here, a petitioner's claims have been rejected on the merits by the state courts either on direct appeal or during a state habeas corpus proceeding, further factual development in federal court is effectively precluded. *See Pinholster*, 563 U.S. at 181-88 (holding an evidentiary hearing is unnecessary when a state court has rejected a claim on the merits and federal habeas review of that rejection is governed by § 2254(d)(1)); *Woodfox v. Cain*, 772 F.3d 358, 368 (5th Cir. 2014) ("The Supreme Court has clarified that when a claim is adjudicated on the merits, for the purposes of review under § 2254(d)(1), the record is limited to the one before the state court, even if the state court issued a summary affirmance.").

Where a federal petitioner's claims lack merit on their face, further factual development is not necessary. *See Register v. Thaler*, 681 F.3d 623, 627-30 (5th Cir. 2012) (recognizing the discretion inherent in district courts to allow factual development, especially when confronted with claims foreclosed by applicable legal authority). "'In cases where an applicant for federal habeas relief is not barred from obtaining an evidentiary hearing by 28 U.S.C. § 2254(e)(2), the decision to grant such a hearing rests in the discretion of the district court.'" *Richards v. Quarterman*, 566 F.3d 553, 562 (5th Cir. 2009) (quoting *Schriro*, 550 U.S.465, 468 (2007)). As discussed below, Petitioner's allegations lack merit and further factual development is unwarranted. Petitioner's motion for an evidentiary hearing is denied.

*c. Motion for Appointment of Counsel*

Finally, Petitioner moves for appointment of counsel. (ECF No. 21.) There is no constitutional right to have an attorney appointed when a prisoner collaterally attacks his conviction. *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987); *McFarland v. Collins*, 7 F.3d 47, 49 (5th Cir. 1993). Nonetheless, this Court is permitted to appoint counsel to a § 2254 petitioner where "the interests of justice so require and such person is financially unable to obtain representation." 18 U.S.C. § 3006A(b). Additionally, an indigent prisoner is entitled to appointed counsel in § 2254 cases if the court determines an evidentiary hearing is required. Rule 8(c), Rules Governing Section 2254 Proceedings. The Court has denied Petitioner's motion for an evidentiary hearing. Accordingly, Petitioner's motion for the appointment of counsel is denied.

## 2. Ineffective Assistance of Appellate Counsel

In his first claim, Petitioner argues his appellate counsel provided ineffective assistance when counsel failed to argue on appeal that (a) Petitioner's 40-year sentence for engaging in organized criminal activity was illegal; (b) Petitioner's 20-year sentence for burglary was illegal; (c) there was insufficient evidence to support Petitioner's conviction for possession of a controlled substance; (d) there was insufficient evidence to support Petitioner's conviction for engaging in organized criminal activity; (e) the trial court abused its discretion by allowing Officer Aubrey to testify as a gang expert; and (f) the State violated Petitioner's right to due process by failing to disclose exculpatory evidence.

The Sixth Amendment to the United States Constitution guarantees citizens the assistance of counsel in defending against criminal prosecutions. U.S. CONST. amend VI. Sixth Amendment claims based on ineffective assistance of counsel are reviewed under the familiar two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a petitioner

cannot establish a violation of his Sixth Amendment right to counsel unless he demonstrates (1) counsel's performance was deficient and (2) this deficiency prejudiced petitioner's defense. *Id.* at 687-88, 690. The Supreme Court has emphasized that "[s]urmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010).

When determining whether counsel performed deficiently, courts "must be highly deferential" to counsel's conduct and a petitioner must show that counsel's performance fell beyond the bounds of prevailing objective professional standards. *Strickland,* 466 U.S. at 687-89. Counsel is "'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Burt*, 571 U.S. at 22 (quoting *Strickland*, 466 U.S. at 690). To demonstrate prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Under this prong, the "likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112 (citing *Strickland*, 466 U.S. at 693). A habeas petitioner has the burden of proving both prongs of the *Strickland* test. *Wong v. Belmontes*, 558 U.S. 15, 27 (2009).

Ineffective assistance of counsel claims are considered mixed questions of law and fact and are analyzed under the "unreasonable application" standard of 28 U.S.C. § 2254(d)(1). *Gregory v. Thaler*, 601 F.3d 347, 352 (5th Cir. 2010). When the state court has adjudicated the claims on the merits, a federal court must review a petitioner's claims under the "'doubly deferential'" standards of both *Strickland* and Section 2254(d). *Woods v. Etherton*, 578 U.S. 113, 117 (2016) (quoting *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011)). In such cases, the "pivotal question" is not "whether defense counsel's performance fell below *Strickland*'s standard," but

Case 1:23-cv-00876-RP-ML   Document 28   Filed 04/25/24   Page 12 of 27

whether "the state court's application of the *Strickland* standard was unreasonable." *Richter*, 562 U.S at 101.

A criminal defendant is constitutionally entitled to effective assistance of appellate counsel when he has a right to appeal under state law. *Evitts v. Lucey*, 469 U.S. 387, 397 (1985); *United States v. Phillips*, 210 F.3d 345, 348 (5th Cir. 2000). The *Strickland* standard for proving ineffective assistance of counsel applies equally to both trial and appellate attorneys. *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Dorsey v. Stephens*, 720 F.3d 309, 319 (5th Cir. 2013). To obtain relief, a petitioner must demonstrate that (1) his appellate counsel's conduct was objectively unreasonable under then-current legal standards, and (2) there is a reasonable probability that, but for counsel's deficient performance, the outcome of the petitioner's appeal would have been different. *See Smith*, 528 U.S. at 285; *Higgins v. Cain*, 720 F.3d 255, 260-61 (5th Cir. 2013). To demonstrate deficiency, Petitioner must show that "counsel unreasonably failed to discover nonfrivolous issues and to file a merits brief raising them." *Smith*, 528 U.S. at 285. Counsel is not, however, required to "raise every nonfrivolous claim, but rather may select among them in order to maximize the likelihood of success on appeal." *Id*. at 288 (citing *Jones v. Barnes*, 463 U.S. 745 (1983)).

a. *Illegal sentences (claims 1(a) & 1(b))*

Petitioner claims he received ineffective assistance of appellate counsel when counsel failed to appeal Petitioner's sentences for engaging in organized criminal activity and burglary, both of which Petitioner alleges are illegal. Specifically, he argues his sentence for engaging in organized criminal activity should have only been enhanced to a second-degree felony, with a maximum sentence of 20 years imprisonment, but that he instead received an illegal 40-year

sentence. He further argues that, because there is nothing in the record to support his 20-year sentence for burglary, the sentence should be voided.

After the jury found Petitioner guilty of all three charges, Petitioner elected to have the judge sentence him. (ECF No. 14-7 at 17-18.) At the sentencing hearing, the trial court pronounced Petitioner's sentence as follows: "I sentence you to 40 years in the Texas Department of Criminal Justice." The trial court did not pronounce a separate sentence for each of Petitioner's three convictions, nor did the court specifically find the enhancement paragraphs to be true. (ECF No. 14-9 at 56.) However, on Petitioner's written judgments, he received a 40-year sentence for his convictions for possession of a controlled substance and engaging in organized criminal activity, a 20-year sentence for the burglary conviction, and both enhancement paragraphs were found true for all convictions. (ECF Nos. 14-37 at 8-16.)[2]

### i. Engaging in Organized Criminal Activity (1(a))

The habeas record before the Court shows the following. Petitioner's indictment listed three separate charges: (1) burglary, classified as a state jail felony; (2) possession of a controlled substance, classified as an unassigned felony; and (3) engaging in organized criminal activity, classified as a third-degree felony. Petitioner's indictment for engaging in organized criminal activity included two subparagraphs:

> On or about the 3rd day of February, 2017, in Hays County, Texas, the Defendant, Antoine Sharod Benson, did
>
> Paragraph A
> then and there, as a member of a criminal street gang, conspire to commit the offense of Burglary of a Building by agreeing with each other that they would engage in conduct that constituted the offense, and the defendant and Tyrone Anderson, Antoine Benson, Calvin Clayton, and Darion Williams performed an

---

[2] The written judgements also originally stated that the jury, not the trial court, assessed punishment. The trial court sua sponte corrected this on the written judgment for Petitioner's conviction for engaging in organized criminal activity, and the other two judgments were corrected via the court of appeals's written order. *Benson*, 2021 WL 4202150, at *8.

overt act in pursuance of the agreement, to-wit: did then and there intentionally and knowingly enter a building or a portion of a building without the effective consent of Charles Villareal or Med Park Pharmacy, the owner thereof, with intent to commit or attempted to commit the theft of property, to-wit: safe and drugs, owned by Med Park Pharmacy or Charles Villareal;

Paragraph B

then and there, with intent to establish, maintain and participate in a combination and in the profits of a combination of three or more persons, namely, the said James Edward Jackson and Calvin Clayton, Tyrone Anderson, Antoine Benson, and Darion Williams, did then and there commit the offense of Burglary of a Building to wit: the said defendant did then and there intentionally and knowingly enter a building or a portion of a building without the effective consent of Charles Villareal or Med Park Pharmacy, the owner thereof, with intent to commit or attempted to commit theft of property, to-wit: safe and drugs, owned by Med Park Pharmacy or Charles Villarreal,

(ECF No. 14-37 at 7). At the close of evidence, the prosecutor stated the following:

Your Honor, we think it might be best to kind of abandon the allegation of establishing or participating in a combination because there hasn't been evidence of that. We believe that there was a continuity of conduct here among these specific individuals and just go on the gang membership paragraph.

(ECF No. 14-6 at 120.) The parties then had a charge conference off the record. (*Id.* at 121.) Afterward, the prosecutor clarified that "[t]he State is going to abandon the allegation in Paragraph (b) of Count III relating to the establishment of a combination, participation, and profit." (*Id.* at 122.) Petitioner's trial counsel did not object. (*Id.*) The jury charge for engaging in organized criminal activity instructed the jurors that "[y]ou must determine whether the state has proved, beyond a reasonable doubt, two elements. The elements are that –

1. the defendant in Hays County, Texas, on or about the 3rd day of February, 2017, committed burglary of a building; and

2. the defendant did this as a member of a criminal street gang.

(ECF No. 14-1 at 47.) The jury charge also defined "Criminal Street Gang", "Conspired to Commit", and "Burglary of a Building." *(Id.)* The jury found Petitioner guilty of all three charges. (ECF No. 14-37 a 119-21.)

Petitioner argues that the State abandoned the allegations in Paragraph B of Count III, and therefore could only proceed to verdict on Paragraph A, which alleges Petitioner "conspired to commit" burglary of a building as a member of a street gang. Under the relevant statute, "conspiracy to commit an offense under this section is punishable in the same manner as an offense under this section." TEX. PENAL CODE ANN. § 71.02(c). Petitioner's indictment shows his burglary charge was classified as a state jail felony. (ECF No. 14-37 at 6.) As a result, Petitioner argues his conviction for engaging in organized criminal activity should have been punished the same as his burglary conviction, i.e., as a state jail felony that was enhanced by Petitioner's two prior felony convictions, resulting in a maximum possible sentence of 20 years imprisonment. *See* TEX. PENAL CODE ANN. §§ 12.425(b) (state jail felony punishment can be enhanced to second degree felony punishment if it's shown that the defendant was convicted of two felonies other than state jail felonies and the second felony conviction occurred subsequent to first felony conviction becoming final), 12.33 (second degree felony punished with not more than 20 years imprisonment and not less than 2 years imprisonment). Accordingly, Petitioner argues his appellate counsel provided ineffective assistance of counsel by not raising this issue on appeal and having Petitioner's sentence reformed or the conviction acquitted.

In his amended answer, Respondent argues that the State did not abandon the entirety of Paragraph B but only the allegation regarding the establishment of a combination, participation, and profit. As a result, the allegation that Petitioner committed the burglary remained in Paragraph B; further, the jury charge instructed the jury to find Petitioner guilty if he had committed a burglary of a building as a part of a criminal street gang. As a result, Respondent argues there is no error in Petitioner's sentence—he was convicted of committing burglary of a building, not conspiracy—and therefore no ineffective assistance of appellate counsel.

15

Under the AEDPA, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Richter*, 562 U.S. at 101 (quoting *Yarborough*, 541 U.S. at 664). Further, the Court presumes the state court applied the correct clearly established federal law, *see Schaetzle v. Cockrell*, 343 F.3d 440, 443 (5th Cir. 2002), and also presumes the state court's factual findings are correct, *see* 28 U.S.C. § 2254(e)(1). It is a petitioner's burden to rebut the state court's factual findings with clear and convincing evidence. *Id.* Even a strong case for relief does not mean the state court's contrary conclusion was unreasonable. *Richter*, 562 U.S. at 102.

Here, the record supports Respondent's argument that the State only abandoned the allegation related to a combination, participation, and profit in Paragraph B, and not the entire paragraph as Petitioner claims. Although the prosecutor states both that the State is abandoning the combination allegation and also that the State will proceed "on the gang membership paragraph," defense counsel did not object to the State's abandonment or to the jury charge, which clearly directs the jury to find Petitioner guilty of engaging in organized criminal activity if they conclude he committed a burglary as a member of a criminal street gang. As a result, the Court concludes the state habeas court did not unreasonably apply *Strickland* when denying this claim: the record does not support Petitioner's claim that appellate counsel failed to raise a non-frivolous claim on appeal that prejudiced Petitioner. Accordingly, this claim is denied.

### ii. Burglary (1(b))

Petitioner next argues his appellate counsel provided ineffective assistance when he failed to appeal Petitioner's sentence for burglary, which Petitioner argues is illegal because the written sentence—20 years imprisonment—varies without any record support from the oral sentence pronounced at the sentencing hearing—40 years imprisonment.

Under Texas state law, "[f]airness to a defendant requires that his sentence be pronounced orally in his presence.'" *Burt v. State*, 445 S.W.3d 752, 757 (Tex. Crim. App. 2014). Further, a written judgment is the declaration and embodiment of the oral pronouncement at sentencing and when there is a conflict between the oral pronouncement and the written judgment, the oral pronouncement controls. *Id.* However, when an oral pronouncement reflects an illegal sentence but the written judgment is a legal sentence, the state court will only reverse the judgment if the variance affects the defendant's substantial rights. *Ribelin v. State*, 1 S.W.3d 882, 885 (Tex. Crim. App.—Ft. Worth, 1999, pet. ref'd).

Petitioner does not argue that his 20-year sentence for burglary is illegal; rather he argues that the variance between the written judgment and oral pronouncement violated due process and his conviction would have been vacated if his appellate counsel had raised the issue on appeal. This is not correct. Petitioner is already serving two 40-year sentences, and it is likely an appellate court would have concluded the variance between Petitioner's oral and written sentences did not affect his substantial rights. *See id.* (although trial court pronounced an 8-year sentence that far exceeded statutory range for convicted offense, because the written judgment imposed a 1-year sentence that was within statutory range, along with fact that defendant was serving the sentence concurrent with an 8-year sentence, means his substantial rights were not affected). Appellate counsel is not deficient for failing to raise a non-meritorious issue on appeal; accordingly, the state habeas court's application of *Strickland* to this claim was not objectively unreasonable, and it is denied.

b.  *Insufficient evidence (claims 1(c) & 1(d))*

Petitioner next claims that his appellate counsel provided ineffective assistance when he failed to argue on appeal that Petitioner's convictions for possession of a controlled substance

17

and engaging in organized criminal activity were not supported by sufficient evidence. Specifically, regarding his conviction for possession of a controlled substance, Petitioner argues the contraband, oxycodone, was not accessible; the State never established there were actually controlled substances in the safe; and the State failed to produce evidence showing Petitioner actually possessed the contraband or controlled it exclusively. Regarding his conviction for engaging in organized criminal activity, Petitioner argues there was insufficient evidence to show that Petitioner was a member of a criminal street gang.

The standard for testing the sufficiency of evidence in a federal habeas review of a state court conviction is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The evidence need not exclude every reasonable hypothesis of innocence or be completely inconsistent with every conclusion except guilt so long as a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt. *United States v. Leahy*, 82 F.3d 624, 633 (5th Cir. 1996). In addition, the AEDPA imposes a "twice-deferential standard" when a federal court reviews a state prisoner's claim challenging the sufficiency of the evidence. *Parker v. Matthews*, 567 U.S. 37, 43 (2012). As the Supreme Court explained in *Cavazos v. Smith*:

> The opinion of the Court in *Jackson v. Virginia* . . . makes clear that it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury. What is more, a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was "objectively unreasonable."

565 U.S. 1, 2 (2011) (citations omitted).

Charles Villareal, who owned MedPark pharmacy, testified that the safe targeted in the burglary contained 410 grams of oxycodone. Villareal also testified that the safe was the only item targeted in the pharmacy and that surveillance video evidence showed individuals using a furniture dolly to move the safe out from the back door of the pharmacy. Regarding the evidence supporting Petitioner's membership in the Fifth Ward Circle gang, Detective Aubrey testified that the Houston Police Department (HPD) had documented Petitioner's membership in the gang and that Petitioner had three tattoos (including one across his abdomen) indicating his membership in the gang.

Petitioner disputes these findings; however, the jury found them sufficient for convicting Petitioner, and the state habeas court denied these claims in Petitioner's state habeas application. The Court's review is limited to determining whether the state habeas court's decision was objectively unreasonable. There is evidence supporting Petitioner's conviction and the state habeas court was not objectively unreasonably in applying *Strickland* to deny these claims. Accordingly, these claims based on insufficient evidence are denied.

c.  *Expert Testimony (claim 1(e))*

Petitioner next claims that his appellate counsel provided ineffective assistance when he failed to argue on appeal that the trial court erred in allowing Detective Aubrey testify as a expert witness on criminal street gangs. Petitioner argues Detective Aubrey should not have been designated as an expert because he did not have sufficient training, had never been designated an expert before, and has never written any articles or reports about gangs.

For this claim to be meritorious, Petitioner must first show the trial court plausibly abused its discretion when allowing Detective Aubrey to testify as an expert. In support of his expert status, Detective Aubrey testified that he was part of a regional crime task force and had

received training on criminal street gangs from the Texas Gang Investigators Association. He further testified that he had access to the database TexGang and was familiar with the Fifth Ward Circle, which he stated had over 500 members and was active in over 25 states. Texas courts have uniformly held that an individual may qualify as an expert witness by attending trainings and conferences covering the subject gang and by communicating with other law enforcement officers about the gang's activities. *See, e.g., Phillips v. State*, 534 S.W.3d 644, 656 (Tex. App.—Houston [1st Dist.] 2017, no pet.) (finding officer was qualified to testify regarding two Houston-area gangs based in part on attending trainings from the Texas Gang Investigators Association on a quarterly basis and speaking with subject gang members in the area during gang investigations); *Hernandez v. State*, No. 01-06-00779-CR, 2013 WL 1804436, at *17-18 (Tex. App.—Houston [1st Dist.] Apr. 30, 2013, no pet.) (officer qualified as an expert on the Mexican Mafia based on communications with other law enforcement officers who had investigated Mexican Mafia cases and crimes, attendance at trainings from various organizations, and interviews with current and former Mexican Mafia members).

Appellate counsel is not required to raise every non-frivolous claim on appeal. It was therefore not deficient performance for appellate counsel not to raise this claim on appeal when state precedent suggested it was not meritorious. Accordingly, the state court's application of *Strickland* to this claim was not objectively unreasonable and it is denied.

### d.  *Failure to address Brady violation (claim 1(f))*

In Petitioner's last claim based on the ineffective assistance of appellate counsel, he argues counsel was ineffective for failing to raise on appeal the State's failure to disclose exculpatory evidence to Petitioner during his trial. Specifically, Petitioner argues the prosecution

withheld a printout from a Texas Gang Database which Petitioner argues shows that HPD had not validated Petitioner as a member of the Fifth Circle Gang.

The trial record shows the following. During Detective Aubrey's testimony, he stated that in 2010, a Houston police officer entered Petitioner into HPD's gang database as a member of the Fifth Ward Circle gang, and that the last entry had been in January 2017, approximately one month prior to the offense at issue. Detective Aubrey then stated he had printed out information from both the Houston and San Marcos gang databases in preparation for his trial testimony. Defense counsel requested to review the printouts, and the Court recessed early for lunch so counsel could review them. (ECF No. 14-6 at 74-78.)

After the recess, defense counsel moved for a mistrial. Counsel argued that Detective Aubrey's printouts showed that Petitioner had not been validated as a gang member by HPD. As a result, counsel argued the State had withheld exculpatory, material evidence from the defense and moved for a mistrial. Defense counsel further argued they would have retained a gang expert had they had this information during discovery.

The prosecutor then asked Detective Aubrey if the printouts showed Petitioner had not been validated as a gang member. Aubrey testified that Petitioner was a confirmed gang member in both the Houston and San Marcos databases. The prosecutor then asked what "validation" meant, to which Aubrey responded as follows:

> So for the Houston record he was documented on 1-28 of 2010 and entered on 2-11 of 2010. He shows not to be validated in there. This occurs when there is a batch upload. So they have to manually go in and do a – do that.

> Like I stated earlier, they have 20,000 gang members so it's manual entries. So him being in here and having a TexGang identifier and having the criteria, I use that information in conjunction with the information that I have and confirm him in San Marcos as a gang member.

(*Id*. at 80.) The trial court then asked the prosecutor if the State had this information in their possession at the time of discovery, which the prosecution denied. Detective Aubrey further testified that the "validated" portion needed to be manually uploaded into the database, but with the number of gang members in Houston, they "just uploaded the documents with their gang files and put them into the system." (*Id.* at 84.)

In response to the motion for mistrial, the prosecutor argued the State turned over the material as soon as they were aware of it, and that the defense had not been prevented from getting a gang expert: gang membership was at issue in the indictment and offense reports, and everyone was aware this was in issue for the two years leading to trial. The trial court denied the motion for mistrial. (*Id.* at 86-87.) After the jury returned to the courtroom, defense counsel questioned Detective Aubrey about the lack of validation from the HPD printouts. (*Id.* at 88.)

"[S]uppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). To establish a *Brady* violation, a petitioner must demonstrate that (1) the prosecution suppressed evidence, (2) the evidence was favorable to the defense, and (3) the evidence was material to either guilt or punishment. *Banks v. Dretke*, 540 U.S. 668, 691 (2004); *Graves v. Cockrell*, 351 F.3d 143, 153-54 (5th Cir. 2003). "Suppressed evidence is material 'if there is a reasonable probability that, had the evidence been disclosed to the defense the result of the proceeding would have been different.'" *Murphy v. Davis*, 901 F3d 578, 597 (5th Cir. 2018) (quoting *United States v. Bagley*, 105 S. Ct. 3375, 3383 (1985)).

To succeed on this claim, Petitioner must show that, had his appellate counsel raised this issue on appeal, he would have had a different outcome, e.g., a reversal of his conviction or a

remand for a retrial. To show that, Petitioner needs to establish that his *Brady* claim is meritorious. By denying this claim, the state habeas court concluded the *Brady* claim was not meritorious, and Petitioner must rebut the state habeas court's factual findings with clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1). Here, even if the Court accepts for the sake of argument that the prosecution suppressed the evidence and it was favorable to the defense, Petitioner fails to show it was material to guilt or innocence. The jury heard the evidence about the lack of validation in the HPD database, and still found Petitioner to be a member of a criminal street gang. Based on the evidence in the record, appellate counsel did not perform deficiently in failing to raise this issue on appeal. The state habeas court's application of *Strickland* to this claim was not objectively unreasonable, and it is denied.

## 3. Ineffective Assistance of Trial Counsel

Petitioner raises two claims based on the ineffective assistance of his trial counsel. First, Petitioner argues his trial counsel provided ineffective assistance by failing to conduct an investigation into whether there was actually 410 grams of oxycodone in the safe.

Under *Strickland*, a reasonable investigation requires, at minimum, that trial counsel interviews potential witnesses and makes an independent investigation of the facts and circumstances of the case. *Kately v. Cain*, 704 F.3d 356, 361 (5th Cir. 2013). In assessing the reasonableness of counsel's investigation, a heavy measure of deference is applied to counsel's judgments and is weighed along with the defendant's own statements and actions. *Strickland*, 466 U.S. at 691. Trial counsel also has wide latitude in determining trial strategy. *See Ward v. Stephens*, 777 F.3d 250, 264 (5th Cir. 2015). In fact, "[d]efense counsel's 'strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.'" *Mejia*, 906 F.3d at 316 (quoting *Rhoades v. Davis*, 852 F.3d 422, 434 (5th

Cir. 2017)). Further, "Strickland does not allow second guessing of trial strategy and must be applied with keen awareness that this is an after-the-fact inquiry." *Granados v. Quarterman*, 455 F.3d 529, 534 (5th Cir. 2006). As a result, an unsuccessful trial strategy does not mean that counsel's performance was deficient. *Avila v. Quarterman*, 560 F.3d 299, 314 (5th Cir. 2009).

Here, Petitioner offers no evidence showing there was not 410 grams of oxycodone in the safe. His claim rests on the idea that, had his trial counsel engaged in more investigation, he might have discovered there was not 410 grams of oxycodone in the safe. However, "conclusory allegations are insufficient to raise cognizable claims of ineffective assistance of counsel." *United States v. Demik*, 489 F.3d 644, 646 (5th Cir. 2007) (quoting *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000)). Petitioner has failed to show that the state habeas court's application of *Strickland* to this claim was objectively unreasonable. It is denied.

Petitioner next argues his trial counsel provided ineffective assistance when he failed to request a running objection to Detective Aubrey's testimony after the trial court allowed him to testify as an expert witness. Petitioner argues Aubrey made several statements that should have been objected to as hearsay, and that the failure to object was prejudicial and also violated the Sixth Amendment's Confrontation Clause.

Petitioner admits that trial counsel objected during the hearing to determine whether Detective Aubrey could testify as an expert witness. Petitioner speculates that counsel should have renewed these objections in front of the jury, but, again, the Court is highly deferential to trial counsel's strategic choices, and Petitioner's statements suggesting a contrary outcome are insufficient to state a claim for federal habeas relief. Further, Petitioner's argument that this action violated his rights under the Confrontation Clause is not legally sound: Detective Aubrey testified in court and defense counsel thoroughly cross-examined him. *See Crawford v.*

*Washington*, 541 U.S. 36, 59 (2004) (Sixth Amendment's Confrontation Clause does not allow admission of "testimonial statements" from a witness who does not testify at trial unless the declarant is unavailable and the defendant has had a prior opportunity to cross-examine). The state habeas court's application of *Strickland* to this claim was not objectively unreasonable, and it is denied.

### 4. *Brady* violation

In Petitioner's last claim, he argues that the State violated *Brady* when it failed to provide him with the *Brady* notice that it supplied to his co-defendants. In support, he attaches a document entitled "Brady Notice" that he states was filed in a co-defendant's case. In the notice, it states the following:

> Through this filing, the State provides notice to the Defendant and this Court that the State has discovered information that potentially must be disclosed as exculpatory or mitigating evidence.

> The Defendant in this case is charged with Engaging in Organized Criminal Activity and Evading Arrest/Detention with Prior. San Marcos Police Department ("SMPD["]) Detective Tracy Frans ("Frans") is a potential witness in this case. On or about April 1, 2017, Frans was served notice of a pending internal SMPD investigation regarding potential policy violations regarding dishonesty and mishandling of evidence. On or about April 19, 2017, Frans resigned before the internal investigation was completed. Once the internal investigation is completed, this notice will be supplemented with information related to any substantiated findings. The State does not plan on calling Frans to testify.

(ECF No. 9 at 82.) Petitioner argues that all his co-defendants received this notice, but he did not. He further argues that each of his co-defendants' charge for possession of a controlled substance was dismissed as a result of this notice.

As detailed above in Section 2(d), to establish a *Brady* violation, a petitioner must demonstrate that (1) the prosecution suppressed evidence, (2) the evidence was favorable to the defense, and (3) the evidence was material to either guilt or punishment. *Banks*, 540 U.S. at 691.

Petitioner fails to show this notice was material to his guilt or punishment. State records support his allegation that all his co-defendants received the State's *Brady* notice. However, his allegation that each of his co-defendants' charge for possession of a controlled substance was dismissed as a result of this notice is incorrect. Specifically, in Tyrone Donnel Anderson's case—the co-defendant whose notice Petitioner attached to his federal habeas petition— Anderson pleaded guilty to possession of a controlled substance on May 12, 2022, and was sentenced to 10 years imprisonment. *See State v. Anderson*, No. CR-18-1281-C (274th Dist. Ct. Hays Cnty. May 12, 2022).

Further, the notice itself provides no evidence that is material to Petitioner's underlying criminal case. It only states that, if there are substantiated findings, the individual will be notified. There is no evidence in Petitioner's habeas application pointing to any substantiated findings or how those findings were material to his criminal conviction. Accordingly, Petitioner has failed to show the state habeas court's denial of this claim resulted in an objectively unreasonable application of federal law. This claim is denied.

### IV. Certificate of Appealability

A petitioner may not appeal a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases, the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. *See Miller-El v. Cockrell,* 537 U.S. 322, 335-36 (2003) (citing 28 U.S.C. § 2253(c)(1)).

A certificate of appealability may issue only if a petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). In cases where a district court rejects a petitioner's constitutional claims on the merits, "the petitioner must demonstrate

that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When a district court rejects a habeas petition on procedural grounds without reaching the constitutional claims, "a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

In this case, reasonable jurists could not debate the dismissal or denial of Petitioner's § 2254 petition on substantive or procedural grounds, nor find that the issues presented are adequate to deserve encouragement to proceed. *Miller-El*, 537 U.S. at 327 (citing *Slack*, 529 U.S. at 484). Accordingly, the Court denies Petitioner a certificate of appealability.

It is therefore **ORDERED** that Petitioner's Motion to Obtain Exculpatory Evidence, Motion for an Evidentiary Hearing, and Motion to Appoint Counsel (ECF Nos. 19-21) are **DENIED**.

It is further **ORDERED** that Petitioner's Amended Petition for a Writ of Habeas Corpus (ECF No. 9) is **DENIED.**

It is finally **ORDERED** that a certificate of appealability is **DENIED**.

SIGNED this 25th day of April, 2024.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE

27